UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| WANDA SUE BRUCE, ) | |
| ) | |
| Plaintiff, ) | Case  No. EDCV 12-827 AJW |
| ) | |
| v. ) | MEMORANDUM OF DECISION |
| ) | |
| CAROLYN W. COLVIN[1], ) | |
| Acting Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

        Plaintiff filed this action seeking reversal of the decision of the defendant, the Acting Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Background**

        The parties are familiar with the procedural history of this case, which is summarized in the Joint Stipulation. [See JS 1-2].   In a written hearing decision that constitutes the final decision of the Commissioner, an administrative law judge ("ALJ") found that plaintiff had severe impairments consisting of obesity, degenerative disc disease of the cervical and lumbar spine, and a history of cervical fusion.

---

        [1]   Carolyn W. Colvin is substituted as the defendant following the resignation of Michael J. Astrue.  Fed. R. Civ. P. 25(d).

1   [Administrative Record ("AR") 13].  The ALJ found that plaintiff retained the residual functional capacity
2   ("RFC") to lift and carry 20 pounds occasionally and 10 pounds frequently; sit for six hours with normal
3   breaks; stand and walk for two hours; and engage in occasional postural activities.  She could not use
4   ladders, ropes, or scaffolds and could not tolerate exposure to unprotected heights, concentrated vibration,
5   or temperature extremes. [AR 14].  Relying on the testimony of a vocational expert, the ALJ determined
6   that plaintiff had past relevant work as an assistant store manager, Dictionary of Occupational Titles
7   ("DOT") job number 185.117-010, and had acquired transferable skills from her past relevant work. [AR
8   22].  The ALJ determined that plaintiff, who was a person of "advanced age" (ages 55-59) on her alleged
9   onset date and became a person "closely approaching retirement age" (ages 60-64) when she turned 60 on
10  December 4, 2009, could not perform her past relevant work as actually or generally performed, but could
11  perform alternative jobs available in significant numbers in the national economy. [AR 22-23].
12  Accordingly, the ALJ found plaintiff not disabled through the date of his decision. [AR 23].

13

14                                    **Standard of Review**

15          The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial
16  evidence or is based on legal error. Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir.
17  2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  "Substantial evidence" means "more than
18  a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir.
19  2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."
20  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted). The court is
21  required to review the record as a whole and to consider evidence detracting from the decision as well as
22  evidence supporting the decision.  Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006);
23  Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than
24  one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."
25  Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir.
26  1999)).

27                                      **Discussion**

28          **Vocational expert testimony**

2

Plaintiff contends that the vocational expert erroneously classified plaintiff's past relevant work and the transferable skills she acquired from that work, and also failed to identify alternative jobs within plaintiff's RFC that require little, if any, vocational adjustment. Plaintiff contends that the vocational expert's testimony therefore does not provide substantial evidence supporting the ALJ's finding that plaintiff can perform alternative work available in significant numbers in the national economy. [JS 4-14].

Plaintiff was represented by counsel during the administrative hearing. In her hearing testimony and disability reports, plaintiff said that she worked for 20 years as an "assistant manager" or "assistant store director" at Sav-On Drugs. [AR 31, 159-160]. The vocational expert testified that plaintiff had past work as an "assistant store manager," and that she acquired transferable skills from her past work. [AR 22]. The ALJ further found that little vocational adjustment would be required for plaintiff to perform the alternative semiskilled, sedentary jobs of retail secretary, DOT job number 201.362-030; administrative assistant, DOT job number 169.167-010; and sales agent, retail finance, DOT job number 250.357-026. [AR 22-23]. The ALJ concluded that the vocational expert's testimony was consistent with information in the DOT. [AR 23].

The Commissioner "relies primarily on the [DOT] for information about the requirements of work in the national economy," but also "uses  testimony from vocational experts to obtain occupational evidence." Massachi v. Astrue, 486 F.3d 1149, 1153 (9th Cir. 2007). The "general job categories" of the DOT are "presumptively applicable to a claimant's prior work. The claimant, however, may overcome the presumption that the [DOT's] entry for a given job title applies to him by demonstrating that the duties in his particular line of work were not those envisaged by the drafters of the category." Villa v. Heckler, 797 F.2d 794, 798 (9th Cir. 1986). "If the [ALJ] incorrectly categorized [the claimant's] occupation, . . . then the description applicable to that category is irrelevant" to assessing the demands of the claimant's past relevant work as generally performed. Villa, 797 F.2d at 798.

Additionally, an ALJ may not rely on a vocational expert's testimony regarding the requirements of a particular job without first determining whether a conflict exists between the expert's testimony and the DOT. "If it does, the ALJ must then determine whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the [DOT]." Massachi, 486 F.3d at 1153; see also SSR 00-4p, 2000 WL 1898704, at *2-*3.

The vocational expert testified that plaintiff's past relevant work as an "assistant store manager" as

generally performed corresponds to DOT job number 185.117-010; however, the DOT job title for that job number is "Manager, Department Store." Plaintiff contends that the DOT job description for "Manager, Department Store" does not apply to her past relevant work as generally performed.

That contention has merit. Plaintiff, the vocational expert, and the ALJ repeatedly and consistently described plaintiff's past job as an "assistant store manager," "assistant manager," or "assistant store director," and the ALJ found that plaintiff's past work was as an "Assistant Store Manager." [AR 22, 31 56, 59, 61, 65-69, 167]. A written "Medical/Vocational Decision Guide" included in the record also identifies plaintiff's past work as that of "Assistance [sic] Store Director." [AR 167]. There is no evidence that plaintiff ever held the title of store manager or ever worked in a department store as that term is generally understood and as used in the DOT.[2]

Plaintiff's description of her job duties supports the conclusion that her past relevant work as generally performed does not correspond to the DOT job of department store manager. During the hearing, plaintiff testified that in her job as an assistant store manager, she spent "an hour maximum in the office" doing paperwork one or two days a week. The rest of her time was spent on the floor. Her job was "very physical – a lot of climbing, a lot of lifting." She had hiring and firing authority. [AR 43]. Other job duties included back room receiving and organizing; bookkeeping; setting up, stocking, unstocking, and breaking down shelves; checking prices and labeling shelves; checking out customers; operating the photo machine, changing photo machine chemicals, and assisting photo customers; taking inventory with a hand-held machine; packing up and boxing seasonal merchandise; shrink-wrapping pallets; using a fork-lift to place pallets on risers; sweeping and dusting the store; helping in the pharmacy when needed; training and supervising employees (which occupied about a third of her time); and acting as store manager in the manager's absence. [AR 159-160].

The job duties of a department store manager as described in the DOT are significantly broader and more complex. They include, but are not limited to, directing and coordinating the store's activities through "subordinate managerial personnel," including the activities of "nonmerchandising departments" such as

---

[2]    The DOT distinguishes between a "department store" and other "retail stores," including a retail store that sells a "general line of merchandise," such as "drugs and sundries." Compare DOT job number 185.117-010, "Manager, Department Store," with DOT job number 185.167-046, "Manager, Retail Store."

1  purchasing, credit, accounting, and advertising, in order to optimize efficiency, minimize costs, and

2  maximize profits; formulating pricing policies; developing and implementing, through subordinate

3  managerial personnel, policies and procedures for store and departmental operations and customer,

4  personnel, and community relations; negotiating or approving contracts with suppliers and service vendors;

5  and reviewing operating and financial statements and sales records to achieve merchandising objectives and

6  profitability.  See DOT job number 185.117-010, "Manager, Department Store."

7       The ALJ asked the vocational expert whether his testimony was consistent with the DOT.  The

8  vocational expert said that it was consistent, and the ALJ so found. [AR 58, 70].  However, when plaintiff's

9  counsel asked the vocational expert whether, in his experience, plaintiff's past work as typically performed

10  was sedentary, as the DOT job description for department store manager indicates, the vocational expert

11  replied, "[n]ot based on my experience . . . just specifically per the DOT."  [AR 58-59].  The vocational

12  expert agreed that an assistant store manager's "duties would include relieving employees or helping solve

13  problems with cash registers," and he testified that "as typically performed, in my experience, an assistant

14  manager spends most of their time on the floor, doing everything from light to medium work."  [AR 58-59].

15  That testimony was consistent with plaintiff's testimony about the job as she performed it, but it is

16  inconsistent with the DOT job description for a department store manager.  The vocational expert also

17  testified that an assistant store manager as generally performed has an Specific Vocational Preparation

18  ("SVP") of  7 (over 2 years up to and including 4 years).[3]  The DOT job of department store manager,

19  however, has an SVP of 8 (over 4 years up to and including 10 years). [AR 61].

20       In light of the inconsistencies within the vocational expert's testimony, between his testimony and

21  plaintiff's testimony about her past work, and between his testimony regarding the requirements of

22  plaintiff's past work as generally performed and the DOT job description of department store manager,

23  which the expert said was controlling, the vocational expert's testimony did not provide substantial evidence

24  supporting the ALJ's finding that plaintiff's past work as generally performed corresponds to the DOT job

25

26       [3]   "Specific Vocational Preparation" is defined as "the amount of lapsed time required by a
typical worker to learn the techniques, acquire the information, and develop the facility needed for

27  average performance in a specific job-worker situation."  The SVP levels range from 1 ("[s]hort
demonstration only") to 9 ("[o]ver 10 years").  "The levels of [the SVP] scale are mutually exclusive

28  and do not overlap." DOT, Appendix C, "Components of the Definition Trailer," 1991 WL 688702.

1    of department store manager.[4]  In addition, the ALJ committed legal error by failing to identify and resolve

2    apparent conflicts between the vocational expert's testimony and information in the DOT for the job of

3    department store manager.  See Massachi, 486 F.3d at 1154 n.19 (holding that "an apparent conflict"

4    between the vocational expert's testimony and information in the DOT "with no basis for the vocational

5    expert's deviation" constituted reversible error).

6         The ALJ found that plaintiff could not perform her work as actually or generally performed, so the

7    defects in the vocational expert's testimony do not warrant reversal at step four.  However, due to plaintiff's

8    age, the vocational expert's classification of plaintiff's past relevant work is material to the ALJ's step five

9    finding in this case.

10        At step five of the sequential evaluation procedure, the Commissioner has the burden of establishing,

11   through the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines, that the

12   claimant can perform alternative jobs that exist in substantial numbers in the national economy.  Bruton v.

13   Massanari, 268 F.3d 824, 827 n.1 (9th Cir. 2001).  When a vocational expert's testimony is used at step five,

14   the expert "must identify a specific job or jobs in the national economy having requirements that the

15   claimant's physical and mental abilities and vocational qualifications would satisfy." Osenbrock v. Apfel,

16   240 F.3d 1157, 1162-1163 (9th Cir. 2001). Due to the adversity of age as a vocational factor, a person who

17   is of "advanced age" or "closely approaching retirement age," is limited to light work or less, and cannot

18   perform past relevant work, ordinarily must have skills that are transferable to alternative skilled or semi-

19   skilled work in order to be found not disabled. The exception to this rule arises when the claimant has recent

20   education that provides for direct entry into skilled or semiskilled work.  See 20 C.F.R. §§ 404.1563(d)-(e),

21   404.1568(d), 416.963(d)-(e),  416.968(d); 20 C.F.R. Part 404, Subpart P, Appendix 2, §§ 201.00(c)-(f),

22   202.00(c)-(f); Terry v. Sullivan, 903 F.2d 1273, 1275-1276 (9th Cir. 1990) ("[I]t is not enough that persons

23   of advanced age are capable of doing unskilled work; to be not disabled, they must have acquired skills from

24

25        [4]    Plaintiff contends that DOT job number 185.137-910, "Assistant Manager," is "much more
26   applicable" to her past relevant work.  The Court has been unable to locate any entry in the DOT
     corresponding to that number or job title, but that is beside the point because it is the role of the ALJ,
27   not the Court, to make factual findings supporting the disability determination.  See  Bray v.
     Comm'r of Social Sec. Admin.,554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of
28   administrative law require us to review the ALJ's decision based on the reasoning and factual
     findings offered by the ALJ . . . .").

1   their past work that are transferable to skilled or semiskilled work.").

2        "Skills refer to experience and demonstrated proficiency with work activities in particular tasks or

3   jobs. In evaluating the skill level of PRW [past relevant work] or potential occupations, work activities are

4   the determining factors."  SSR 82-41, 1982 WL 31389, at *3.  "The claimant is in the best position to

5   describe just what he or she did in PRW, how it was done, what exertion was involved, [and] what skilled

6   or semiskilled work activities were involved," but the ALJ also may consult the DOT or a vocational expert

7   for assistance in determining skill levels.  SSR 82-41, 1982 WL 31389, at *4.  A claimant's acquired skills

8   are transferable to other jobs "when the skilled or semi-skilled work activities [the claimant] did in past

9   work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds

10  of work. This depends largely on the similarity of occupationally significant work activities among different

11  jobs." 20 C.F.R. §§ 404.1568(d)(1), 416.968(d)(1); see SSR 82-41, 1982 WL 31389, at *2.

12        Where, as here, transferability of skills is an issue and must be decided,

13        the ALJ is required to make certain findings of fact and include them in the written decision.

14        Findings should be supported with appropriate documentation. [¶] When a finding is made

15        that a claimant has transferable skills, the acquired work skills must be identified, and

16        specific occupations to which the acquired work skills are transferable must be cited in the

17        ALJ's decision.

18  Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d. 1219(9th Cir. 2009) (ellipses omitted) (quoting SSR 82-41,

19  1982 WL 31389, at *7).

20        The ALJ relied on the vocational expert's testimony to find that plaintiff had the following

21  transferable skills from her past relevant work: "planning, directing, coordinating activities, administrative

22  skills, ability to work with [the] general public, general professional management skills, personnel [sic]."

23  [AR 22].  With the exception of the ability to work with the general public, the transferable skills identified

24  by the vocational expert appear to be derived from the DOT job description for department store manager,

25  which, as noted above, involves directing and coordinating the store's merchandising and nonmerchandising

26  activities, "directing, controlling, or planning activities of others,"and implementing store procedures and

27  policies through subordinate management personnel.  See DOT job number 185.117-010, "Manager,

28  Department Store."  Plaintiff's past work as she actually performed it, or as generally performed in the

7

1   vocational expert's professional experience, involved very little administrative work and required her to

2   spend most of her time on the floor directly engaged in merchandising and customer service activities and

3   supervising employees who were not "subordinate managerial personnel."  Because plaintiff has shown that

4   the DOT job of department store manager does not apply to her past relevant work, the ALJ's finding that

5   plaintiff acquired transferable skills from that DOT job is not supported by substantial evidence in the

6   record.

7          Whether or not plaintiff possessed transferable skills is  "a dispositive issue for her claim," Bray,

8   554 F.3d at 1226, so the absence of substantial evidence in the record supporting the ALJ's finding of

9   transferable skills alone warrants reversal.  Plaintiff also argues, however, that the ALJ failed to satisfy his

10   burden to identify alternative jobs within her RFC to which she could apply her transferable skills with very

11   little, if any, vocational adjustment.  A  person over age 55 cannot be found to have skills transferable to

12   sedentary work unless very little, if any, vocational adjustment is required in terms of tools, work processes,

13   work settings, or the industry.  For those closely approaching retirement age (ages 60-64),  the "very little

14   vocational adjustment" requirement applies to skills that are transferable to either sedentary or light work.

15   20 C.F.R. §§ 404.1563(d)-(e), 404.1568(d), 416.963(d)-(e),  416.968(d);  20 C.F.R. Part 404, Subpart P,

16   Appendix 2, §§  201.00(f), 202.00(f); Terry, 903 F.2d at 1275.  Thus, plaintiff "cannot be expected to make

17   a vocational adjustment to substantial changes in work simply because skilled or semiskilled jobs can be

18   identified which have some degree of skill similarity with" her past relevant work.  SSR 82-41, 1982 WL

19   31389, at *5; accord, Terry, 903 F.2d at 1279. "In order to establish transferability of skills for" individuals

20   such as plaintiff, "the semiskilled or skilled job duties of their past work must be so closely related to other

21   jobs which they can perform that they could be expected to perform these other identified jobs at a high

22   degree of proficiency with a minimal amount of job orientation."  SSR 82-41, 1982 WL 31389, at *5;

23   accord, Terry, 903 F.2d at 1279.

24          The ALJ found that plaintiff could perform the job of "retail secretary," DOT job number 201.362-

25   030; "administrative assistant", DOT job number 169.167-010; and "sales agent, retail finance," DOT job

26   number 250.357-026. [AR 22-23].  The DOT does not include a job title "retail secretary"; the DOT number

27   the vocational expert provided for that job is for the job "secretary."  Neither "secretary" nor the other two

28   jobs identified by the ALJ are "Retail Trade Industry" jobs, the general DOT industry designation which

1  includes, among other jobs, the jobs of department store manager and retail store manager.  The retail trade

2  industry is "concerned with the sale of goods to ultimate consumers for consumption or utilization, and with

3  services incidental to the sale of goods.  Most retailing is carried on in places of business that are open to

4  the general public."  See DOT, Occupational Titles Arranged by Industry Designation, Retail Trade

5  Industry, 1991 WL 683363.  Nothing in the vocational expert's testimony or the ALJ's decision warrants

6  the conclusion that alternative jobs outside the retail trade industry would require "very little, if any,

7  vocational adjustment . . . in terms of  . . . the industry."  20 C.F.R. §§ 404.1568(d)(4), 416.968(d)(4).

8        The vocational expert's testimony is flawed in other respects.  He testified that both the jobs of

9  "retail secretary" and "administrative assistant" have an SVP of 4, while the job of sales agent, retail finance

10  has an SVP of 5 and is "semiskilled." [AR 62-64].  He also testified that an SVP of 1 or 2 is unskilled, 3

11  through 5 is semiskilled, and 6 or above is skilled. [AR 64].  The ALJ disagreed with the vocational expert's

12  testimony that a job with an SVP of 5 is semiskilled. [See AR 64-65 ("Actually, 5 is skilled. . . . I've always

13  been taught 5 is skilled.")].  Nonetheless, the ALJ found that the vocational expert's testimony was

14  consistent with the DOT and adopted it in finding that the alternative jobs identified in his decision are

15  semiskilled and require little vocational adjustment. [AR 23, 62-63].

16        According to the DOT, however, the jobs of secretary and administrative assistant do not have an

17  SVP of 4 and are not semiskilled.  The DOT job of secretary has an SVP of 6, and the DOT job of

18  administrative assistant has an SVP of 7.  The ALJ did not identify or resolve that conflict between the

19  ALJ's testimony and the DOT. Contrary to the vocational expert's testimony, moreover, a job with an SVP

20  of 5 (or more) is skilled, not semiskilled; only jobs with an SVP of 3 or 4 are considered semiskilled.  SSR

21  00-4p, 2000 WL 1898704, at *3 ("[U]nskilled work corresponds to an SVP of 1-2; semi-skilled work

22  corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT.") (citing 20

23  C.F.R. §§ 404.1568, 416.968).[5]  The Commissioner's "regulatory definitions of skill levels are controlling,"

24

25        [5]    Social security rulings

26        are binding on all components of the Social Security Administration [SSA] and
       represent precedent final opinions and orders and statements of policy and
27       interpretations of the SSA.  SSRs reflect the official interpretation of the SSA and
       are entitled to some deference as long as they are consistent with the Social Security
28       Act and regulations.  SSRs do not carry the force of law, but they are binding on

1    and an ALJ "may not rely on evidence provided by a [vocational expert] . . . if that evidence is based on

2    underlying assumptions or definitions that are inconsistent with [the Commissioner's] regulatory policies

3    or definitions," including the definition of skill levels and SSA policy on transferability of skills.   SSR 00-

4    4p, 2000 WL 1898704, at *3.   Therefore, all three of the alternative DOT jobs identified in the ALJ's

5    decision are skilled, not semiskilled as the vocational expert testified and the ALJ found.

6           Plaintiff also contends that all three of the jobs identified by the ALJ involve numerous skills and

7    abilities she did not acquire in her past relevant work, and that more than minimal adjustment would be

8    required for her to perform them.   Plaintiff's arguments have merit.   For example, the vocational expert

9    testified that plaintiff had "administrative skills; the ability to work with the general public; general

10   professional management skills; and [sic] personnel" that would transfer to the three jobs he identified.[AR

11   63].   On examination by plaintiff's counsel, however, the vocational expert testified that using a computer

12   and typing would be an "important part" of the secretary and administrative assistant jobs, and that given

13   plaintiff's testimony that she only spent an hour or two a week in the office doing paperwork, there "is a

14   big difference" between plaintiff's past work and those two jobs in terms of the computer use and typing

15   required. [AR 66].   Asked by plaintiff's counsel whether plaintiff could do those jobs with little vocational

16   adjustment, the vocational expert answered: "Well, I – from her 20-odd years of working in that position

17   . . . one would assume that she would obtain those skills." [AR 67].   The record lacks substantial evidence

18   supporting such an assumption.   Moreover, the ALJ did not find that plaintiff had transferable computer or

19   typing skills.

20          The vocational expert testified that the sales agent, retail finance job would require knowledge of

21   "credit finance, employee services, credit ratings, working with business establishment," and would involve

22   dealing with banks and lenders on credit and financial matters. [AR 68]. The DOT states that the job

23   involves "[s]elling services, such as credit, financial, insurance, employee investigation reports, and credit-

24   rating books" by making sales calls to financial institutions and other business establishments, and may also

25   involve selling equipment, such as portable teletype terminal units.   DOT job number 250.357-026, "Sales

26   _____

27          ALJs nonetheless.

28   <u>Bray</u>, 554 F.3d at 1224 (internal quotation marks, citations, alteration, and footnote omitted).

1   Agent, Financial-Report Service." The vocational expert said that he did not "see what major vocational

2   transition you would need other than on-the-job training" [AR 68], but on examination by plaintiff's

3   counsel, he conceded that plaintiff would not perform "the same function basically" in the two jobs. [AR

4   69 ("I'm saying that some of the skills that she had as an assistant store manager would facilitate that [sales

5   agent] position for her.")].  To the extent that the vocational expert's testimony about the sales agent, retail

6   finance job was based on transferable skills plaintiff purportedly acquired from the DOT job of department

7   store manager, that testimony is not substantial evidence, for the reasons described above.  To the extent

8   that the vocational expert was relying on plaintiff's description of her past work, his testimony also lacks

9   evidentiary value because plaintiff did not report any experience in direct sales or any job responsibilities

10  dealing with matters of finance, credit, insurance, or the like.  There is no substantial evidence showing that

11  plaintiff could perform that job "at a high degree of proficiency with a minimal amount of job orientation."

12  Terry, 903 F.2d at 1279 (quoting SSR 82-41)

13          For the foregoing reasons, the vocational expert's testimony does not amount to substantial evidence

14  supporting the ALJ's finding that plaintiff has skills that are transferable with little vocational adjustment

15  to the alternative DOT jobs of secretary, administrative assistant, and sales agent, retail finance, and the ALJ

16  committed legal error in relying on that testimony.

17          The Commissioner argues that plaintiff was represented by counsel during the hearing, and that if

18  counsel had raised any issue regarding transferability of skills during the hearing, "it could have been dealt

19  with administratively–rather than waiting until the matter is before this Court." [JS 14].  The Commissioner

20  also analogizes the conduct of plaintiff's counsel during the hearing to that of a "potted plant."  [JS 14].

21          The Commissioner's argument that plaintiff's counsel failed to raise these issues during the

22  administrative hearing is unfounded and ill-considered.  Plaintiff's counsel's questioned the vocational

23  expert at length about his conclusions and succeeded in eliciting some testimony from the vocational expert

24  that was favorable to plaintiff. [See AR 58-59, 65-69].  In addition, plaintiff's counsel argued to the ALJ

25  that the vocational expert's testimony regarding transferability of skills and vocational adjustment was

26  defective.  [AR 70-71].  The responsibility for failing to properly resolve this matter at the administrative

27  level lies not with plaintiff's counsel, but with the Commissioner.

28          **Remedy**

The choice whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the court.  See Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.), cert. denied, 531 U.S.  1038 (2000); Terry, 903 F.2d at 1280.  "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful. Conversely, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2000) (holding that the district court erred in remanding for further proceedings because "the record, including the limited vocational expert testimony, clearly establishes that [the claimant] cannot perform a sedentary job or any other substantial gainful work that exists in the national economy . . . .").

The appropriate remedy in this case is to remand it for an award of benefits.  Relying on the vocational expert's defective testimony, the ALJ failed to properly classify plaintiff's past relevant work or her transferable skills and did not identify a single alternative job that plaintiff could perform with minimal vocational adjustment. The ALJ could and should have addressed the apparent defects and conflicts in the vocational expert's testimony, especially after plaintiff's counsel called his attention to some of those defects, but instead uncritically adopted it.  Plaintiff applied for benefits approximately three and half years ago, and she is now 63 years old.  This qualifies as the  "unusual case" in which remand for an award of benefits is warranted. Benecke, 379 F.3d at 595; see Terry, 903 F.2d at 1280 (declining to remand for further development of the record as to the vocational adjustment required to perform an alternative job identified by the vocational expert and relied upon by the ALJ where the claimant was 64 years old, applied for benefits almost four years earlier, and "further delays at this point would be unduly burdensome").[6]

///
///
///

---

[6]  This disposition makes it unnecessary to consider plaintiff's contention that the ALJ improperly evaluated the credibility of her subjective complaints.

**Conclusion**

For the reasons stated above, the Commissioner's decision is not supported by substantial evidence and does not reflect application of the proper legal standards.  Accordingly, the Commissioner's decision is **reversed**, and this case is **remanded** to the Commissioner for an award of benefits.

**IT IS SO ORDERED.**

February 28, 2013

ANDREW J. WISTRICH
United States Magistrate Judge